# HIRAM MILLER vs. THE STATE.

### COURT OF APPEALS, TYLER TERM, 1883.

*Murder—Case Stated.* The defendant having provoked a difficulty with, and pun-
ished the deceased by throwing him on the ground and abusing him, was withdrawn.
Being released, the defendant again advanced upon the deceased when the latter
fired upon him and upon another who interfered in behalf of the defendant, and
having wounded that other retired to reload his pistol. The interfering party hav-
ing retired permanently from the contest, and the defendant to arm himself, having
so armed himself returned, and attempted to shoot the deceased but was ptevented.
At this juncture an officer ordered bystanders, including three parties named H. to
arrest the parties engaged in the shooting. The three H's attempted to arrest the
deceased and in the shooting which accompaied the attempt, between the three H's
and the deceased, the deceased was killed. During this shooting the defendant
stood on the ground armed, but made no attempt to shoot. *Held*, in substence, 1st
If there was preconcert between the three H's and defendant to kill the deceased or
do him serious bodily harm, in pursuance whereof the H's killed the deceased, the
defendant being present, he was guilty with them as a principal in murder as much
as if he had fired the fatal shot. 2nd. If the H's were justifiable in the killing, the
defendant would not be guilty of the homicide. (Note the opinion for illustration.)
3rd. If the difficulty between the defendant and deceased had terminate.1, and the
H's without the preconcert of the defendant, and of their independent purpose and
intent, killed the deceased, the defendant would not be guilty, although he was him-
self seeking to kill the deceased unlawfully. 4th. If defendant attempted to shoot
the deceased with intent to kill him, and was actuated by malice aforethought, and
under circumstances which, if the death of the deceased had resulted, the homicide
would have been murder, and the defendant was prevented from any cause from
effecting his purpose, then he would be guilty of assault with intent to murder.
Note the opinion for evidence *held* not to a charge upon, for such as would sustain
a conviction for manslaughter.

Appeal from Leon County.

*Wood, Johnson & Dotson* for appellant.

*J. H. Burts* Assistant Attorney General for the State.

Opinion by Willson, J.

This conviction is for manslaughter and the punishment assessed
is two years' confinement in the state peneteniary. The indictment
charges the murder of one Robert Linson.

That one decision of the questions presented in the record may
be properly understood, it is necessary that we should summarize
the facts in evidence.

Robert Linson was shot and killed in the town of Jewett, Leon
county, on the 25th of March, 1883. Linson, who was a small man,
was attacked by the defendant, who was a large man, without provo-
cation and in a violent manner. An effort was made to separate

them, when Swan Hardin prevented their separation. Defendant got Linson down on the ground, and beat him severely, and kicked and spurred him on the head, until he was pulled away. After Linson got loose from defendant, and when defendant was again advancing upon him, he, Linson, drew a pistol and shot at defendant, and then shot also at one Harris who had interferred in the difficulty in behalf of defendant. Several shots were exchanged between Linson and Harris, and Harris was wounded and retired from the conflict. Linson then got behind a hack, a short distance off, and reloaded his pistol. In the meantime defendant had gone after a gun, and returned with a Winchester rifle, with which he attempted to shoot Linson, but was prevented from shooting. At this juncture the county attorney appeared upon the scene, and called upon those who were present, among whom were A. B. Hardin Sr., A. B. Hardin Jr , and Swan Hardin to arrest the parties who had been engaged in the shooting. Swan Hardin thereupon approached Linson, and was followed by his brother, A. B. Hardin. Linson's horse had been led to him, and when Swan Hardin had reached within a few steps of Linson some words passed between them, when Linson leaped upon his horse, pistol in hand, and fired upon Swan Hardin. Swan Hardin fired upon Linson at the same instant. As Linson rode off he fired again at Swan Hardin and Swan Hardin fired two other shots at him. Swan Hardin was wounded by one of Linson's shots. As Linson rode off he was also fired upon by A. B. Hardin Sr., and A. B. Hardin Jr., and after going a few steps he fell from his horse dead. While the shooting between the Hardins and Linson was taking place, the defendant was a little distance away with his gun, but did not shoot or make any attempt at that time to shoot, and was apparently taking no part in the difficulty. From the commencement of the difficulty between Linson and the defendant to the killing of Linson was but a very short time, perhaps not exceeding ten minutes.

Now upon this state of facts, what is the law ? We will state our views of it as applicable to the case.

1. If the defendant was acting together with the Hardins or either of them in provoking a contest with Linson with the purpose and intent of killing said Linson, or doing him serious bodily injury, and in pursuance of this common design and purpose, the Hardins or either of them, the defendant being present, shot and killed, Lin-

son, then the defendant would be guilty as a principal in the murder as much so as if he had fired the fatal shot.

2. If the Hardins were justifiable in killing Linson, the defendant would not be guilty of homicide. Thus if Swan Hardin, in good faith, without purpose or intent to kill Linson or do him serious injury, advanced upon Linson for the purpose of arresting him for a felony or breach of the peace committed within his view, and Linson fired upon him, and Swan Hardin, or his father or brother, or all of them together fired upon and killed Linson in the necessary defense of the life of Swan Hardin, then this would be justifiable homicide, and neither the Hardins nor the defendant would be guilty of unlawful killing.

3. If the difficulty between Linson and defendant had terminated, and the Hardins, without the knowledge, advice concurrence, aid or encouragement of the defendant, independently of their own accord, and to accomplish a purpose and intent of their own, shot and killed Linson, the defendant would not be responsible for their acts, although he was himself seeking to kill the deceased unlawfully.

4. If the defendant attempted to shoot the deceased with intent to kill him, and in such attempt was actuated by malice aforethought, and under circumstances which, if the death of Linson had resulted, the homicide would have been murder, and the defendant was prevented from any cause from effecting his purpose, then he would be guilty of assault with intent to murder.

5. There is no evidence in the case which would warrant a charge or sustain a connection for manslaughter, viewing and construing the facts fairly and reasonably.

A voluminous charge was given to the jury by the learned trial judge which covers thirty-eight peges of the transcript. It contains instructions upon several issues which are in no manner presented by the evidence in the case, and which could only tend to confuse and mislead the jury. We shall not pause to point out the objectionable instructions in detail. It was doubtless the object of the the learned judge to give to the jury all the law applicable to the evidence in the case; but in his anxiety to do this, we think he submitted several issues not raised by the facts in proof. On the other hand he failed to instruct the jury fully and correctly upon the two propositions stated in paragraphs 2 and 3 of this opinion, which in our judgment are vital issues in this case, and are fairly presented by the evidence.

Special charges upon these issues were requested by the defendant and refused by the court, and the action of the court in refusing them properly excepted to. Numerous and specific exceptions were made to the charge of the court as given to the jury, and are presented for our consideration in a bill of exceptions. It would consume too much time and lengthen this opinion unnecessarily, were we to enter upon a discussion of the various objections made to the charge of the court, many of which we think are tenable. We have said enough, we think, to make plain our view of the law as applicable to the facts of this case, and as the charge given to the jury does not, in our opinion properly present the law, but in some respects erroneously presents it, and presents issues not raised by the evidence, and in such manner as to prejudice perhaps the defendant's rights, the judgment is reversed, and the cause remanded for a new trial.